#### IN THE UNITED STATES DISTRICT COURT FOR THE
#### NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **TERESA M. HARMON,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 04-CV-856-PJC |
| ) | |
| **JOANNE B. BARNHART, Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

#### ORDER

Claimant, Teresa M. Harmon ("Harmon"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, the Court REVERSES and REMANDS the Commissioner's decision.

**Claimant's Background**

Harmon was born on November 23, 1976 and was 27 years old at the time of the ALJ's decision. (R. 89, 352). She has a high school equivalent education. (R. 352). Claimant has no past relevant work experience. (R. 23). She alleges an inability to work beginning December 13, 1998, due to neck, back, shoulder, knee and arm pain. (R. 89, 120, 355-56). She also claims

to suffer from major depression, post traumatic stress disorder ("PTSD"), anxiety and panic disorder. (R. 355-56).

Claimant's medical records indicate that she was initially treated by Troy Tortorici, M.D., in 1998-1999 for severe headaches, neck and upper back pain, mid and lower back pain and numbness in her right hand caused by a work-related injury. (R. 161-72). Dr. Tortorici diagnosed Harmon with cervical sprain, cervical radiculitis, lumbar sprain/strain, and right shoulder contusion, noting a positive Foraminal Compression test, Soto-Hall test, Kemp's test bilaterally, Ely's test bilaterally, straight leg tests bilaterally, and Braggard's test on the left. *Id*. Dr. Tortorici recommended conservative therapy and prescribed Motrin for inflammation, Lortab for pain and Flexeril for muscle spasms. *Id*. He opined that Harmon was temporarily totally disabled since December 13, 1998, the date of her work injury. (161-64).

From December 10, 1999 through June 6, 2001, Harmon obtained counseling from Chisholm Trail Counseling Services, Inc. for anger management, depression and anxiety. (R. 181-203). Records from these counseling sessions indicate that Harmon had a history of childhood sexual abuse. (R. 194). She was diagnosed with panic and anxiety disorders with social phobias and borderline personality disorder. (R. 200-202).

Harmon underwent a consultative evaluation by N. Alkarra, M.D., on February 17, 2001. (R. 173-79). Dr. Alkarra noted that Harmon complained of constant cervical and lumbar pain since her work injury. (R. 173). He found she had "point tenderness to the cervical, thoracic, lumbosacral spine, medial aspect of the right knee, anterior aspect of the right shoulder," "[r]ight paracervical, parathoracic and paralumbar muscle tenderness with scoliosis of the lumbar spine"

and difficulty in squatting. (R. 176). He, however, found no limitation in the range of motion in her spine and upper and lower extremities and normal neurological function. (R. 175).

Harmon was treated by Sean P. MacKenzie, M.D., from November 11, 2002 through May 29, 2003 for pain management. (R. 280-332). Dr. MacKenzie diagnosed Harmon with myofascial pain in her neck and back, limbically augmented pain syndrome ("LAPS"), anxiety disorder with panic attacks, PTSD and depression. (R 310, 306, 302, 299, 290, 286, 281). Dr. MacKenzie prescribed Lexapro for treatment of Harmon's depression, Norco for pain and Buspar for anxiety. *Id*. As part of her pain management treatment with Dr. MacKenzie, Harmon saw counselor Judy Lee, L.P.C., who assessed Harmon with Global Assessment Functions ("GAF") ranging from 40-50.[1] (R. 312-32). On December 11, 2002, Dr. MacKenzie wrote that Harmon had significant physical and mental problems and based on these problems, she was totally disabled. (R. 305).

From March 3 to May 28, 2003, Harmon underwent a psychological assessment by Spindeltop MHMR Services. (R. 206-44, 333-37). She was diagnosed with major depression, panic disorder, and PTSD and assessed with a GAF score of 50. (R. 335).

Harmon underwent a consultative physical examination by D.P. Sunkara, M.D., on April 5, 2003. (R. 248-49). Dr. Sunkara found that Harmon had chronic low back and neck pain, right knee arthritis, right shoulder arthralgia and right hip arthralgia, decreased range of motion in her

---

[1] The GAF score represents Axis V of a Multiaxial Assessment system. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR), 32-36 (4th rev. ed. 2000). A GAF score is a subjective determination which represents the "clinician's judgment of the individual's overall level of functioning." *Id*. at 32. The GAF scale is from 1-100. A GAF score between 21-30 represents "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment . . . or inability to function in almost all areas." *Id*. at 34. A score between 31-40 indicates "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id*.  A GAF score of 41-50 reflects "serious symptoms . . . or any serious impairment in social, occupational, or school functioning." *Id*.

3

back, neck, right knee and right shoulder, an antalgic gait, atrophy and motor changes, and lacked the ability to heel and toe walk. (R. 249).

On April 29, 2003, Harmon was examined by consultative physician Rajen Desai, M.D.P.A.. (R. 250-52). Dr. Desei noted that Harmon had a "long history of PTSD because of sexual and physical abuse by her stepfather from the age 3-12 " and that she "started seeing a psychiatrist at the age of 14-15." (R. 250). Harmon complained of pain, depression with auditory and visual hallucinations, flashbacks, decreased sleep, sad mood and social withdrawal, as well as chronic neck and back pain. (R 250). Dr. Desai found Harmon's account of her past history to be reliable and supported by past medical records. *Id*. Dr. Desai noted that Harmon's "stream of mental activity [was] [n]ormal" and her memory and concentration were fair. (R. 251). He diagnosed her as suffering from PTSD and assessed her functional impairment as moderate with a GAF of 60. (R. 252).

## Procedural History

On October 28, 2002, Harmon protectively filed for Supplemental Security Income benefits under Title XVI, 42 U.S.C. § 1381 *et seq*.. (R. 92). Her application for benefits was denied in its entirety initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Gerald L. Meyer was held March 25, 2004, in Beaumont, Texas. (R. 348-70). By decision dated April 29, 2004, the ALJ found that Claimant was not disabled at any time through the date of the decision. (R. 18-26). On September 24, 2004, the Appeals Council denied review of the ALJ's findings. (R. 6-8). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 416.920. [2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991).

Substantial evidence is such evidence "as a reasonable mind might accept as adequate to support a conclusion." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2002). In reviewing the

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 416.972. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. § 416.920(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 416.920.

decision of the Commissioner, the court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Id.*  Nevertheless, the court examines "the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determines if the substantiality of the evidence test has been met." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).

## Decision of the Administrative Law Judge

The ALJ made his decision at the fifth step of the sequential evaluation process.  He found that Harmon had severe impairments of right shoulder arthralgia, right knee arthritis, chronic neck pain with muscle strain, chronic low back pain, major depression and PTSD, and a history of drug use, but that none of these impairments either singularly or in combination met or medically equaled a listed impairment. (R. 25).  Though Harmon had no past relevant work experience, the ALJ concluded that Harmon had the physical RFC to perform light unskilled work, finding that she could lift and carry 20 pounds occasionally and 10 pounds frequently, walk and stand 6 hours in an 8-hour day, and sit 6 hours in an 8-hour day, but that she could not climb, crawl, stoop or crouch, or work around dangerous moving machinery.  *Id*.  In regard to Harmon's mental RFC limitation, the ALJ found that she could perform "one-two step" tasks in a routine work environment with low stress.  *Id*.  The ALJ further found that there were jobs existing in significant numbers in the national and regional economies that she could perform based on her RFC, age, education, and work experience; specifically, those of janitor and food

processor. (R. 25).[3]  Accordingly, the ALJ concluded that Harmon was not disabled under the Social Security Act at any time through the date of the decision. (R 25-26).

## Review

Claimant asserts as error that the ALJ failed to perform: (1) a proper determination at steps 2, 3 and 5 of the sequential evaluation process, (2) a proper analysis of the opinions of the treating and examining physicians, and (3) a proper credibility analysis. Because the Court finds that the ALJ failed to properly weigh the opinions of Harmon's treating physicians, Drs. Tortorici and MacKenzie, the Court remands the case for reevaluation.

A treating physician may offer an opinion that reflects a judgment about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis and prognosis, what the claimant can do despite her impairment, and any physical or mental restrictions. 20 C.F.R. § 416.927(a)(2). A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987); *Goatcher v. U.S. Dept. of Health & Human Services*, 52 F.3d 288, 289-90 (10th Cir. 1995). When a treating physician's opinion is inconsistent with other medical evidence, the ALJ must examine the other medical reports to see if they outweigh the treating physician's report, not the other way around. *Goatcher*, 52 F.3d at 290 (citing *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988). Reports of physicians who have treated a patient over a period of time are given greater weight than those of physicians employed or paid by the government for the purpose of defending against a disability claim. *Frey*, 816 F.2d at 513. A treating physician

---

[3] Defendant concedes that the vocational expert mistakenly quoted the wrong Dictionary of Occupational Titles ("DOT") number for the "light janitorial job" Harmon could perform, but that the DOT listing of "Cleaner, Housekeeping" job, code 323.687-14, meets the light-work limitations found by the ALJ. *Defendant's Response*, p. 13.

may specifically opine as to whether claimant is disabled or unable to work, as to whether the claimant's impairments meet a listing, as to claimant's RFC, or as to the application of vocational factors. Such an opinion is not dispositive, however, because the responsibility for determining the ultimate issue of disability is reserved for the Commissioner. 20 C.F.R. § 416.927(e).

If the ALJ decides not to give the treating physician's opinion controlling weight, he must consider the following factors to determine how much weight to give the opinion:

> (1) the length of the treatment relationship and the frequency of examination;
> (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
> (3) the degree to which the physician's opinion is supported by relevant evidence;
> (4) the degree of consistency between the opinion and the record as a whole;
> (5) whether or not the physician is a specialist in the area upon which the opinion is rendered;
> (6) other facts brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. § 416.927(d)(2)-(6); *Goatcher*, 52 F.3d at 290.

Harmon complains that the ALJ failed to discuss Dr. Tortorici's findings and opinion regarding her disability and improperly weighed Dr. MacKenzie's findings and opinion. The Commissioner responds that the ALJ specifically discussed Dr. Tortorici's findings and opinion and, in any case, as Dr. Tortorici's determination that Harmon was "temporarily totally disabled" in 1998 is not relevant to the ALJ's 2004 determination of Harmon's disability, the ALJ did not implicitly discount Dr. Tortorici's opinion by failing to address it. The Commissioner also contends that the ALJ properly discounted Dr. MacKenzie's opinion that Harmon was disabled based on the lack of objective evidence..

The Court agrees with the Commissioner that the ALJ recounted Dr. Tortorici's 1998-1999 opinion that Harmon suffered from cervical sprain, cervical radiculitis, lumbar sprain and right shoulder contusion which rendered her "temporarily totally disabled for an undetermined amount of time pending further evaluation and treatment." (R. 20, 164). The Commissioner, however, goes too far in arguing that Dr. Tortorici's December 1998 findings and opinion that Harmon was "temporarily totally" disabled are not particularly relevant to the ALJ's determination that she was not disabled in April 2004 and, therefore, the ALJ did not implicitly discount Dr. Tortorici's opinion. Harmon alleges an inability to work since December 13, 1998, the date she sustained a work-related injury. Shortly after that date, she sought treatment from Dr. Tortorici complaining of "severe headaches, neck and upper back pain, mid and low back pain." (R. 165). In making his diagnosis of cervical sprain, cervical radiculitis, lumbar sprain/strain, and right shoulder contusion, Dr. Tortorici noted Harmon's positive Foraminal Compression test, Soto-Hall test, Kemp's test bilaterally, Ely's test bilaterally, straight leg tests bilaterally, and Braggard's test on the left. (R. 166-67). The record reflects that Harmon complained of cervical and lumbar pain beginning with Dr. Tortorici's initial evaluation and treatment in 1998-1999 and continued through the date of the hearing. Dr. Tortorici's findings and opinion are clearly relevant to and, indeed must be weighed by the ALJ in determining, Harmon's claim. Further, contrary to the Commissioner's argument, Dr. Tortorici's evaluation of Harmon's medical condition is consistent with that of her other treating physician, Dr. MacKenzie, which the ALJ expressly rejected. Yet, the ALJ did not provide any reason for discounting Dr. Tortorici's opinion as required by *Goatcher* and 20 C.F.R. §416.927(d)(2)-(6).

This error is amplified by the ALJ's improper evaluation of Dr. MacKenzie's medical opinion. Dr. MacKenzie, a pain management specialist in Texas, treated Harmon from November 11, 2002 through May 29, 2003 (after which she moved from Texas to Oklahoma). (R. 230-332). As the ALJ correctly noted, Dr. MacKenzie "assessed the claimant to have myofascial pain, neck and back, limbically augmented pain syndrome, anxiety disorder with panic attacks, and depression" and opined in his November 11, 2002 letter that Harmon was "totally disabled" as a result of these significant physical and mental problems. (R. 21). The ALJ, however, assigned "little weight" to Dr. MacKenzie's opinion, stating that there was "no objective clinical findings offered to substantiate that the claimant is totally disabled" and the "2003 treatment notes prepared by Dr. MacKenzie do not show any reference to the claimant being totally disabled." *Id*. The ALJ's reasons for rejecting Dr. MacKenzie's opinion fail to meet the requirements set forth in 20 C.F.R. §416.927.

While it is true that Dr. MacKenzie's treatment notes do not specifically state that Harmon was "totally disabled," the treatment notes of Dr. MacKenzie and his team of therapists support the opinion set forth in his December 11, 2002 letter. Harmon received medical and psychological treatment from Dr. MacKenzie and his counseling staff from November 2002 through May 2003. (R. 280-332). The treatment notes show that Harmon "scored a 29 on the Beck depression inventory indicating a severe level of depression; a 50 on the modified Oswestry pain questionnaire indicating a moderate to severe level of perceived disability; she was positive for generalized anxiety, social anxiety disorder and panic disorder but only scored a 10% average of dissociative experience scale." (R. 310). The notes also record that Harmon had suicidal thoughts and auditory hallucinations, suffered from PTSD, depression and anxiety and

10

complained of constant pain in her spine and knee which was "unbearable at its worst and moderate to severe at its best." (R. 280-332). The GAF scores recorded in these treatment records were consistently between 40 and 50, reflecting "serious impairment" in social and occupational functioning. (R. 312, 319-21).

Additionally, Dr. MacKenzie diagnosed Harmon as suffering from LAPS. The record includes an exhibit of excerpts from articles written by Jeffrey D. Rome, M.D., Medical Director of the Comprehensive Pain Rehabilitation Center at Mayo Clinic, describing LAPS as a syndrome which includes "pain that is chronic and resistant to analgesic treatments, in association with disturbances of mood," affects "regulation, sleep, energy, libido, and memory/concentration," and results in "fatigue, dysphoria, irritability, insomnia, oversensitivity to stressful events, and a lowered ability to fulfill social and work roles." (R. 158, 160). As noted above, the record reflects that Harmon complained of and was treated for chronic pain, depression, anxiety, insomnia, memory problems and inability to handle stress and that she sought treatment for anger management. Although the ALJ received the articles on LAPS into evidence and noted that Dr. MacKenzie assessed Harmon as having LAPS, he did not discuss the diagnosis, whether Dr. MacKenzie's opinion was based on this diagnosis or whether it constituted a medically determinable impairment.[4]

---

[4] *See, e.g.* Social Security Ruling 03-2p(finding that a similar chronic pain syndrome, Reflex Sympathetic Dystrophy Syndrome("RSDS"), also referred to as Complex Regional Pain Syndrome, ("CRPS"), "constitutes a medically determinable impairment, when it is documented by appropriate medical signs, symptoms, and laboratory findings," including complaints of chronic pain resulting from trauma which fails to respond to varied treatments and the presence of one or more the following physical signs on the affected region: gooseflesh, swelling, changes to skin color or texture, abnormal hair or nail growth, osteoporosis or involuntary movements fo the affected area. SSR 03-2p; *see also Lamb v. Barnhart*, 85 Fed.Appx. 52 (10th Cir. 2003)(finding the ALJ erred in failing to analyze the physical ailments of degenerative disc disease and CRPS and the resulting pain and physical limitations documented in claimant's medical records).

The Court thus concludes that the ALJ erred in failing to properly assess the opinions of Claimant's treating physicians in light of the factors set forth in 20 C.F.R. § 416.927 and that the case should be remanded for appropriate consideration.

**Conclusion**

Based upon the foregoing, the Court REVERSES AND REMANDS the decision of the Commissioner denying disability benefits to Claimant for further proceedings consistent with this order.

DATED this 31st day of March, 2006.

Paul J. Cleary
United States Magistrate Judge